## MOTOTARO EGUCHI v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. August 4, 1919.)

No. 3162.

1. ALIENS ⊙⇒54—IMMIGRATION—LITERACY TEST.

A rule promulgated by the Commissioner General of Immigration, providing a special method of applying the literacy test to immigrants, *held* within the statute and valid.

2. ALIENS ⊙⇒46—EXCLUSION OF IMMIGRANTS—LITERACY TEST.

A Japanese alien *held* properly refused admission because of his failure to satisfactorily pass the literacy test.

3. ALIENS ⬥⟶46—IMMIGRATION—LITERACY TEST—EXEMPTION.

Under Immigration Act, § 3 (Comp. St. 1918, § 4289¼b), exempting from the literacy test aliens who have been lawfully admitted and have resided in the United States continuously for five years, and who return within six months from the date of their departure therefrom, such time cannot be extended because of the inability of the alien to obtain transportation within the six months.

Appeal from the District Court of the United States for the District of Hawaii; Horace W. Vaughan, Judge.

Habeas corpus by Mototaro Eguchi against the United States. From a judgment discharging the writ, petitioner appeals. Affirmed.

Lightfoot & Lightfoot, of Honolulu, T. H., for appellant.

S. C. Huber, U. S. Atty., of Honolulu, T. H., and Annette Abbott Adams, U. S. Atty., and Ben F. Geis, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The appeal in this case is from the judgment of the court below discharging a writ of habeas corpus that had been issued in behalf of the appellant, and remanding him to the custody of the immigration officer, for deportation to Japan, of which country he is a native, and from which he came to Hawaii.

The record shows that he first came to that territory about the year 1906, where he remained as a plantation laborer until December 16, 1916, on which day he left there for his native country. February 5th, following, to wit, February 5, 1917, Congress passed the act entitled "An act to regulate the immigration of aliens to, and the residence of aliens in, the United States" (Act Feb. 5, 1917, c. 29, 39 Stat. 874 [Comp. St. 1918, §§ 4289¼–4289¼u]), which act contained, among others, the following provisions:

"That after three months from the passage of this act, in addition to the aliens who are by law now excluded from admission into the United States, the following persons shall also be excluded from admission thereto, to wit:

"All aliens over sixteen years of age, physically capable of reading, who cannot read the English language, or some other language or dialect, including Hebrew or Yiddish. * * * That for the purpose of ascertaining whether aliens can read the immigrant inspectors shall be furnished with slips of uniform size, prepared under the direction of the Secretary of Labor, each containing not less than thirty nor more than forty words in ordinary use, printed in plainly legible type in some one of the various languages or dialects of immigrants. Each alien may designate the particular language or dialect in which he desires the examination to be made, and shall be required to read the words printed on the slip in such language or dialect. That the following classes of persons shall be exempt from the operation of the illiteracy test, to wit: * * * All aliens who have been lawfully admitted to the United States and who have resided therein continuously for five years and who return to the United States within six months from the date of their departure therefrom. * * * *"

The record shows that the appellant returned to the territory of Hawaii arriving at the port of Honolulu July 12, 1917, where he was

examined by the board of special inquiry provided for by the aforesaid act of Congress, and was by that board ordered deported on the ground of illiteracy, from which order he appealed to the Secretary of Labor, pursuant to a provision of the act, resulting in a denial of his appeal. To the petition of the appellant for a writ of habeas corpus was annexed the proceedings before the board of special inquiry, and upon the final submission of the matter to the court below the evidence there given was by stipulation of the parties submitted.

[1] It is undisputed that the Commissioner General of Immigration is authorized, with the approval of the Secretary of Labor, to make rules and regulations for the enforcement of the law; but it is contended that, in adopting subdivision 3 of rule 4, the Commissioner General enlarged the law, which could not be legally done. The rule so complained of is as follows:

"*Special Method of Applying Reading Test.*—In all cases in which, because of lack of the qualified interpreters necessary for the observance of the general method prescribed in subdivision 2 hereof, or because for any other reason it is impracticable to adopt said general method, immigration officers shall use special printed and numbered slips, supplied by the bureau, the sentences appearing upon which are instructions to the alien to do several simple acts, his responding properly and in proper order to the instructions, or not doing so, to constitute a demonstration of whether or not he is able to read the prescribed number of words printed upon the slip handed him."

The ground of complaint is that the requirement thus made is that the applicant shall "*understandingly*" read." If that be conceded, we think a sufficient answer to the objection is that Congress in enacting the law was not dealing with *parrots,* but with human beings, who are supposed to have some intelligence.

[2] The only evidence shown by the record tending to satisfy the requirement of the law is the following, taken from the examination of the applicant:

"Q. Can you read and write? A. I can read easy writing or printing, the Katakana and some Hirakana.

"(Applicant is given card No. 5003, in the Katakana, and reads for three minutes. He attempts to do what the card directs, but only does part, and also does more than is directed. He is asked what the card says, and tells partially. The interpreter states that he reads the card correctly.

"(He is tested with card No. 1001, in the Katakana, which is written out in large letters on paper, so as to avoid the objection that the print is too small. He reads for four minutes, and states that he cannot read part of it. The interpreter states that he reads correctly, except the one part. When asked what the card directs, he misses most of what it says, but states a part correctly.

"(He is given card No. 4009, in the Katakana, and reads it over three minutes. The interpreter states that he reads it correctly. He fails entirely to do what it directs.)

"Q. What does the card tell you to do? A. I cannot understand it.

"(He is given card No. 4009, in the Hirakana, which contains the same reading matter as card No. 4009 in the Katakana, with which he has just been tested. He reads it four minutes. He does part of what is directed, more than when he was tested in the same thing in the Katakana. He states partially what is directed. All these cards, except the first used, were written out in large letters and much more plainly than it is on the cards.)"

We agree with the court below that other portions of the testimony of the applicant before the board of special inquiry show that he was conscious of his inability to read.

[3] The fact, testified to by the applicant, that he was unable to procure passage on either of the two ships named by him by which he could have returned to Hawaii within the prescribed six months from the time of his departure therefrom, cannot properly be held to have extended the time fixed by Congress within which such aliens are permitted to return.

The judgment is affirmed.